UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**GRACE MALDONADO,**

        **Plaintiff,**

        v.                          Case No. 09-C-1173

**RACINE COUNTY and
TONIA PRATHER,**

        **Defendants.**

---

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

In lieu of filing an answer to Grace Maldonado's ("Maldonado") complaint, on January 25, 2010, Racine County ("Racine") filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 8.) On January 28, 2010, defendant Tonia Prather ("Prather") likewise filed her own motion to dismiss, (Docket No. 13), joining in the reasoning set forth in Section II of Racine's brief in support of its motion to dismiss, (see Docket No. 9). On February 16, 2010, Maldonado filed an amended complaint, (Docket No. 18), thus mooting the defendants' motions to dismiss, (see Docket No. 26), but nonetheless Maldonado filed a brief in opposition to the defendants' motions to dismiss wherein she contended that the defendants' arguments were addressed by the amended complaint, (Docket No. 19).

On March 4, 2010, Racine filed a filed a new motion to dismiss Maldonado's amended complaint and brief in support. (Docket No. 20, 21.) Prather again filed her own motion to dismiss wherein she essentially adopted Racine's argument that Maldonado has no constitutionally protected interest in the receipt of Wisconsin Shares payments. (Docket No. 22.) Maldonado has

responded, (Docket No. 23), Racine has replied and Prather has joined in that reply. (Docket Nos. 28 and 30.) The pleadings on the defendants' motions to dismiss are closed, and the matters are ready for resolution. All parties have previously consented to the full jurisdiction of a magistrate judge. (Docket No. 2, 10, 14.)

Maldonado's amended complaint relates to her being ordered to close down her home-based day care center by Prather, whom she alleges "was, at all material times, an employee and agent employed by" Racine. (See Docket No. 18 at ¶¶3, 7.) Maldonado's daycare facility was certified by Racine in accordance with state law. (See Docket No. 18 at ¶6.) As a certified daycare provider, Maldonado was eligible to receive subsidies from the state under Wisconsin's W-2 program for each of the eligible children under her care. (See Docket No. 18 at ¶9.) Maldonado contends that Prather's order that Maldonado close her daycare center was inconsistent with an agreement between the American Federation of State, County and Municipal Employees, District Councils 40 and 48, AFL-CIO, Wisconsin Child Care Providers Together, and the State of Wisconsin. (See Docket No. 18 at ¶13-15.) Thus, she contends that when ordered to close her facility, she was denied due process under the Fourteenth Amendment.

In its first motion to dismiss, Racine contended that Maldonado's complaint was deficient because the doctrine of respondeat superior is wholly inapplicable to § 1983 suits, and Maldonado failed to allege that the complained of action was the result of any policy or custom established by a policymaking official of the county. (Docket No. 9 at 2, 4-6.) Second, Racine contended that Maldonado, as a third party payee selected by payee beneficiaries rather than a beneficiary, could not prove that she had any property interest in the continued receipt of the subsidy payments. (Docket No. 9 at 2, 6-9.) This second contention was joined by Prather as the basis for her own motion to dismiss. (Docket No. 13.)

In response to the defendants' first motions to dismiss, Maldonado submitted an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(A) making the following most relevant changes (the underscored portions indicate the most relevant changes in Maldonado's amended complaint):

16. <u>On information and belief, the County had provided Prather with all training and education relevant to her position of employment and, further, on information and belief, Prather's above-described actions were taken pursuant to the County policies or customs relevant to Prather's discharge of the duties of her position of employment.</u>

    * * *

18. Maldonado had a property interest in <u>her continued certification as a daycare provider, which, in turn, gave rise to</u> her continued receipt of the above-described subsidy payments<u>, all of which were necessary in order for her to pursue her livelihood</u>.

19. <u>Before Prather engaged in the above-described conduct neither the County nor any other person acting on behalf of it engaged in the investigation and substantiation required by Article 3, Section D.17 of the Agreement.</u>

20. The County, acting under color of state law <u>and pursuant to its policy or custom to disregard the investigation and substantiation requirements of Article 3, Section D.17. of the Agreement</u>, has deprived Maldonado of rights guaranteed by the United States Constitution by failing to provide her with due process before depriving her of her property, in violation of the Fourteenth Amendment to the Constitution of the United States of America.

(Docket No. 18 at 4-5.)

Racine presents two distinct arguments as to why it believes that Maldonado's amended complaint is still deficient. First, it contends that although Maldonado's amended complaint recites the elements of a § 1983 claim, Maldonado fails to offer sufficient factual support for her claim. (Docket No. 21 at 3-5.) Second, Racine contends that Maldonado has no constitutionally protected property interest in the continued receipt of Wisconsin Shares payments.

A civil complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The Rule reflects a liberal notice pleading

3

regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." Brooks v. Ross, 578 F.3d 574, 2009 U.S. App. LEXIS 18711 (7th Cir. 2009) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)). Even for § 1983 claims there is no heightened pleading standard. McCormick v. City of Chicago, 230 F.3d 319, 323 (7th Cir. 2000) (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993)).

Recently, the Supreme Court has addressed the question of just how short and plain that statement may be. See Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The Seventh Circuit synthesized the recent holdings of the Court regarding the pleading standard set forth in Rule 8(a)(2) and stated:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

Brooks, 578 F.3d 574, 2009 U.S. App. LEXIS 18711, 15.

Although detailed factual allegations are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 555).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

4

Id. at 1949 (quoting Twombly, 550 U.S. at 556, 557, 570) (internal citations and quotation marks omitted).

As Racine points out, with respect to the specificity of pleading required to state a claim for relief under § 1983, the Seventh Circuit has held that simply presenting a boilerplate allegation that the defendant's conduct was the result of a policy or custom is insufficient. Sivard v. Pulaski County, 17 F.3d 185, 188 (7th Cir. 1994) (quoting Rodgers v. Lincoln Towing Serv., Inc., 771 F.2d 194, 202 (7th Cir. 1985); but see McCormick v. City of Chicago, 230 F.3d 319, 324-25 (7th Cir. 2000) (citing Leatherman, 507 U.S. at 168-69) (reversing district court's conclusion that complaint was insufficient when the district court found that it contained only "boilerplate allegations of a discriminatory municipal policy, entirely lacking in any factual support that a municipal policy does exist," because the complaint contained a "smattering of phrases like 'highest policymaking officers' and 'widespread custom' throughout the complaint." ) Likewise, the Supreme Court in Iqbal stated, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 555).

In the present case, Maldonado does more than merely recite the elements of a § 1983 claim. She alleges that she was harmed by a specific policy or custom of Racine. Although Racine is correct in stating that Maldonado does not present any supporting facts to establish that such a policy actually exists, under the circumstances of this case, such pleading is not required.

At this stage, Maldonado need only sufficiently inform the defendants of the nature of her claim and persuade the court that the complaint states of plausible claim for relief. Whether or not Maldonado is able to muster evidence of the actual existence of such a policy or custom is a hurdle she will have to clear should the defendants move for summary judgment. See McCormick, 230 F.3d at 325 (quoting Leatherman, 507 U.S. at 168-69) ("Federal courts and litigants must rely on

summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.")

When faced with a motion to dismiss such as this, the court is primarily guided by two questions. See Iqbal, 129 S. Ct. at 1949-50. First, is the complaint sufficient to inform the defendants of the nature of the plaintiff's claim? As for this question, the court concludes that the amended complaint is sufficient. Maldonado does not merely baldly allege that she was harmed by a policy or custom but rather identifies the specific policy or custom of Racine that she alleges resulted in her injury, i.e. Racine's policy or custom "to disregard the investigation and substantiation requirements of Article 3, Section D.17. of the Agreement." (Docket No. 18 at 4.).

Second, the court must ask, is the claim plausible? This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to determine whether the well-pleaded facts alleged in the complaint are sufficient to "permit the court to infer more than the mere possibility of misconduct." Iqbal, 129 S. Ct. at 1950. Thus, plausibility requires more than a possibility but less than a probability. Id. A complaint is not insufficient merely because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotation marks omitted). On this question as well, the court finds that Maldonado has satisfied the minimal requirements imposed by Rule 8(a).

Therefore, the court shall turn to the second argument in favor of dismissal advanced by Racine and the one joined by Prather: that Maldonado has no constitutionally protected property interest in the uninterrupted receipt of Wisconsin Shares payments. (Docket No. 21 at 5-8.) Maldonado's claim with respect to the existence of a property interest is contained within paragraph 18 of her amended complaint, which states:

> Maldonado had a property interest in her continued certification as a daycare provider, which, in turn, gave rise to her continued receipt of the above-described

6

subsidy payments, all of which were necessary in order for her to pursue her livelihood.

(Docket No. 18 at 5.)

Maldonado points to Wis. Stat. § 48.651(1), Wisconsin Administrative Code § DCF 202, and an agreement between "the American Federation of State, County and Municipal Employees, District Councils 40 and 48, AFL-CIO, Wisconsin Child Care Providers Together, ("WICCPT") [and] the State of Wisconsin" as the sources of her alleged property interest. (Docket Nos. 18 at 4; 19 at 4-9.)

With respect to the WICCPT agreement, it states, in relevant part, that all certified child care providers have "[t]he right to have complaints against a provider investigated and substantiated before any enforcement action is taken, unless the State regulator determines that a summary suspension (per HFS 45.11(10)(a)) is required." (Docket No. 18 at 4, ¶14.)

In addition to arguing that it is not bound by this agreement, Racine contends that this agreement merely establishes a procedural right and not any substantive limitation upon Racine's ability to suspend Maldonado's certification. (Docket No. 21 at 7.)

It is well-established that simply because some procedure exists before a benefit may be denied or revoked does not mean that an individual has a property interest in that benefit. See, e.g., Shango v. Jurich, 681 F.2d 1091, 1100-01 (7th Cir. 1982); Lyznicki v. Bd. of Ed., Sch. Dist. 167, Cook Cty., 707 F.2d 949, 952 (7th Cir. 1983); Hadley v. County of Du Page, 715 F.2d 1238, 1244 (7th Cir. 1983); Heck v. City of Freeport, 985 F.2d 305, 311 (7th Cir. 1993); Ledford v. Sullivan, 105 F.3d 354, 358 (7th Cir. 1997). "Constitutionalizing every state procedural right would stand any due process analysis on its head. Instead of identifying the substantive interest at stake and then ascertaining what process is due to the individual before he can be deprived of that interest, the process is viewed as a substantive end in itself." Shango, 681 F.2d at 1101. Although a procedural right does not, in itself, create a substantive property interest, "the existence of state

7

procedural protections is not irrelevant to a determination of whether a substantive interest exists. A state often provides for specific procedures to ensure the realization of a parent substantive right." Id.

In order for a property interest to exist, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.

"[A] legitimate claim of entitlement is created only when the statutes or regulations in question establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." Cornelius v. La Croix, 838 F.2d 207, 210 (7th Cir. 1988) (quoting Eidson v. Pierce, 745 F.2d 453, 459-60 (7th Cir. 1984). "More plainly, it means 'an entitlement that stands or falls on the application of rules to facts.'" Id. (quoting Scott v. Village of Kewaskum, 786 F.2d 338, 339-40 (7th Cir. 1986). "Where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement." Id.

Business licenses may be regarded as property "if it cannot be taken away from the holder before the end of a definite period without proof of misconduct." Baer v. Wauwatosa, 716 F.2d 1117, 1122 (7th Cir. 1983); see also Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir.1983). But as Racine points out, Maldonado's certification was distinct from a license to operate a business. Unlike a liquor license, see, e.g., Club Misty, Inc. v. Laski, 208 F.3d 615, 619 (7th Cir. 2000); Reed, 704 F.2d at 948, or other license which renders an individual eligible to conduct a

8

certain business, see, e.g., Baer, 716 F.2d at 1123 (license to sell firearms), Maldonado was not prohibited from operating a day care business after her certification was suspended. The certification is required only to receive Wisconsin Shares payments for the care of eligible children, not as a universal prerequisite to operate a day care center. Wisconsin Shares is obviously not the only way day care operators may be compensated for their services in Wisconsin, and thus the revocation of her certification did not preclude Maldonado from earning a living by operating a child care business.

However, it is not whether Maldonado could have operated her business without the certification that is the crucial question for the court. An individual may have a protected property interest in a certification that is not essential to the operation of one's business but merely makes the individual eligible for some particular benefit. See Chicago United Indus. v. City of Chicago, 2010 U.S. Dist. LEXIS 3148, *50 (N.D. Ill. Jan. 15, 2010) (holding that a company had a property interest in its continued certification as a minority-owned business enterprise, which makes the company eligible for certain government contracts). Therefore, the court must determine whether Maldonado had a "legitimate claim of entitlement to" the certification. Roth, 408 U.S. at 577. The answer to this question lies within the statutes and regulations that govern the certification of child care providers.

Wisconsin Statute § 48.651(1) makes certification a prerequisite for a child care provider to be able to receive reimbursement for the care of a child who is eligible to receive a child care subsidy. The Department of Children and Families is charged with promulgating the rules regarding the requirements for certification, Wis. Stat. § 49.155(1d), and for addressing violations of the certification rules, Wis. Stat. § 49.155(7m). These rules regarding certification are found in Chapter DCF 202 of the Wisconsin Administrative Code and state that a certification, once issued, "shall be renewed upon application if the operator continues to comply with the certification standards." DCF

9

202.04(5). If a certified child care operator violates the Department's rules or Wis. Stat. § 48.685, the county "shall require the operator to submit a plan or correction for the violation and may . . . [s]uspend the operator's certification for not more than 60 days. The agency shall either reinstate or revoke the certification by the date the suspension expires." DCF 202.065. Provisions for revocation or non-renewal are contained in DCF 202.06(1) and state that a certification may be revoked or non-renewed for a variety of reasons such as if the child care operator is charged with or convicted of a crime that substantially relates to the care of children, submits false information, or fails to cooperate with the certifying agency.

Based upon the foregoing rules and statutes, it is clear that a certification cannot be suspended or revoked merely at the whim of the county. Rather, the statutes and rules establish "a system of nondiscretionary rules governing revocation or renewal of" the certification. Cornelius, 838 F.2d at 210. Thus, Maldonado is entitled to expect that as long as she complies with the applicable statutes and rules, her license will not be suspended or revoked. Maldonado alleges in her complaint that at all relevant times she met these requirements. (Docket No. 18 at 3, ¶6.) Therefore, the court finds that Maldonado's complaint sufficiently alleges that she possessed a constitutionally protected property interest in her certification so as to require denial of the defendants' motions to dismiss.

**IT IS THEREFORE ORDERED** that the defendants' motions to dismiss, (Docket Nos. 20, 22), are **denied**. The defendants shall answer or otherwise plead to the complaint in accordance with the Federal Rule of Civil Procedure and this district's Local Rules.

**IT IS FURTHER ORDERED** that this court's stay of discovery, (Docket No. 26), is **vacated**. Discovery shall proceed as follows:

- Initial disclosures shall be completed no later than **May 31, 2010**.
- Plaintiff shall disclose any experts no later than **August 5, 2010**.

10
Case 2:09-cv-01173-AEG   Filed 04/12/10   Page 10 of 11   Document 31

- Defendants shall disclose any experts no later than **September 20, 2010**.

- All discovery shall be completed no later than **November 5, 2010**.

- The court will conduct a telephone scheduling conference on **November 9, 2010** at **8:30 a.m.** to discuss the filing of motions and further scheduling. The court will initiate the call. No dispositive motions shall be filed prior to this date unless all parties stipulate that all discovery necessary to resolve the motions has been completed.

Dated at Milwaukee, Wisconsin this 12th day of April 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge
